UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IBRAHIM NIMER SHIHEIBER,<br><br>    Plaintiff,<br><br>    v.<br><br>OFFICER HERNANDEZ BADGE #4039, et al.,<br><br>    Defendants. | Case No. 21-cv-00609-JCS<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 15 |

## I. INTRODUCTION

Plaintiff Ibrahim Shiheiber, proceeding pro se, brings this civil rights action based on an encounter with officers of the San Francisco Police Department that occurred on January 24, 2019. He names Officer Hernandez[1] and the City of San Francisco as defendants. Plaintiff alleges that Officer Hernandez subjected him to an unlawful detention and search and used excessive force on him, in violation of his Fourth Amendment rights. He further alleges that when he later attempted to file a citizen's complaint against the officer, he was sent on a "wild goose chase," suggesting a custom or practice on the part of the City of discouraging citizens from filing complaints against the police, giving rise to liability on the part of the City under *Monell v. Dep't of Soc. Servs.*, 436

---

[1] At the hearing, Plaintiff explained that there were two officers at the scene with the surname Hernandez – the one described as the "female officer" in the complaint and the male officer who is alleged to have used excessive force against him. The badge number of the former is #4309 and of the latter is #307. Plaintiff clarified that he inadvertently named the female Officer Hernandez (#4309) as a defendant whereas he intended to sue the male Officer Hernandez (#307). Defendants' counsel represented that the name of the male officer is Brett Hernandez. Plaintiff will be permitted to amend the complaint to name the correct officer. In describing the factual allegations, the Court's references to "Officer Hernandez" are to the male Officer Hernandez, #309. Like Plaintiff, the Court will refer to Officer Hernandez, #4309, as "the female officer" to avoid confusion. The Court notes, however, that as alleged the complaint asserts no claims against Officer Brett Hernandez.

U.S. 658, 691–92 (1978) as to the excessive force claim. The City brings a Motion to Dismiss ("Motion") seeking dismissal of the *Monell* claim. A hearing on the Motion was held on November 5, 2021. For the reasons stated below, the Motion is GRANTED.[2]

## II. BACKGROUND[3]

### A. The Amended Complaint

In the Amended Complaint, which is the operative complaint, Plaintiff alleges that on January 24, 2019, he noticed a police vehicle in his rear-view mirror as he parked in front of a sandwich shop in San Francisco. Amended Complaint ¶ 6. He exited his own car and was walking around the back of it when an officer in the police vehicle called to him to "come here." *Id.* ¶ 7. Plaintiff said, "no thank you" and the officer responded, "then you are being detained." *Id.* Plaintiff understood the statement as a command and immediately put his hands in the air. *Id.* The officers got out of the vehicle and surrounded Plaintiff. *Id.*

According to Plaintiff, when he asked why he was being detained, a female officer told him it was because he was parked in a red zone. *Id.* ¶ 8. When he offered to move the car, however, Officer Hernandez put his hand on Plaintiff's chest and pushed him while the officer's partner cornered Plaintiff from the other side. *Id.* Plaintiff said, "don't touch me" to Officer Hernandez, who responded "oh, I am going to touch you." *Id.* ¶ 9. Officer Hernandez told Plaintiff he was going to pat him down for weapons and Plaintiff told the officer that he did not consent to the search. *Id.* When Plaintiff "turned [his] attention to the left away from the officer," the officer grabbed Plaintiff, who ended up on the ground. *Id.* ¶ 10. Plaintiff told the officer to "stop" and that he was hurting Plaintiff. *Id.* "Fearing for [his] life," Plaintiff "freed [himself] from the threat of eminent [sic] danger" and he was "then attacked again and slammed into the street." *Id* ¶ 11. Plaintiff alleges that Officer Hernandez then kneeled on his back as he put handcuffs on Plaintiff and that Plaintiff was in severe pain. *Id.* Plaintiff complained that the handcuffs were "hella tight." *Id.*

---

[2] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).
[3] For the purposes of the instant motion the Court assumes the allegations in the Amended Complaint to be true.

More officers arrived on the scene and Plaintiff was put in a police car. *Id.* ¶ 14. Plaintiff heard one of the officers say, "did you get him good? Too bad we got here late. If I was here I would have dipped him on his head." *Id.* Plaintiff alleges that "[t]he comments of the arriving officers suggest a custom or practice by the City of San Francisco Police Officers to [use] excessive force against citizens." *Id.* ¶ 15. Plaintiff alleges that he was detained in the police car for half an hour while the officers search his fiancé's car and that he was given a parking ticket. *Id.* 16.

According to Plaintiff, "[a]fter the incident [he] initially went to 850 Bryant [Street], San Francisco, to the first floor window and told them [he] would like to file a [complaint] against an officer." *Id.* 18. Plaintiff alleges that "[t]he two officers on duty told [him] to try another location and stated they 'don't do that here.'" *Id.* Plaintiff then went to the Third Street Station, where he was "dismissed and directed to go back to 850 Bryant." *Id.* When he returned there, "two white female employees treated [him] like a vagrant." *Id.* Plaintiff alleges that "[t]he disrespect was blatant as they offered no information or assistance of any kind and actualy [sic] said 'you probably deserved what you got.'" *Id.* ¶ 20. Then "[a]n African American officer or clerk leaned over and quietly advised [Plaintiff] that [he] should go to the Department of Accountability, which [he] did immediately [sic] where [he] was treated with respect which all human beings deserve." *Id.* ¶ 21.[4]

Plaintiff alleges that "[b]eing turned away at multiple locations by the City of San Francisco officials and sent on a wild [goose] chase from station to station suggests a custom or practice to deter and discourage complaints being filed against police." *Id.* ¶ 19. He further alleges that "[t]he whispering of information [by the clerk who directed Plaintiff to the Office of Accountability] suggests she was going against custom or practice to provide [Plaintiff] such information." *Id.* ¶ 22. According to Plaintiff, even though he had been "victimized" he was "treated with total disregard and disrespect" and was " denied information at two separate stations and therefore denied [his] right to file charges." *Id.* ¶ 23. He contends "[t]his was a Lack of

---

[4] At the hearing, Plaintiff stipulated that ultimately, he was able to file a complaint with the Office of Accountability.

3

Reasonable Diligence by multiple personel [sic] employed by the City of San Francisco." *Id.*

In his Amended Complaint, Plaintiff asserts three claims against Officer Hernandez under 42 U.S.C. § 1983 and the Fourth Amendment, for unlawful detainment, excessive force and illegal search. He also asserts the Fourth Amendment claim for excessive force (Claim Two) against the City.

### B. The Motion

The instant motion is brought only by the City. In the Motion, the City argues that Plaintiff has not alleged facts sufficient to establish municipal liability under 42 U.S.C. § 1983 and *Monell*. Motion at 3-4. Plaintiff opposed the Motion on the basis of his allegations that he was denied assistance in filing a citizen's complaint, indicating there is an "unspoken code or policy" by the City of "denying victims of police adequate avenues to seek justice against police." Opposition at 4. In its Reply, the City contends Plaintiff's argument fails because isolated and sporadic incidents are insufficient to establish a policy or practice and he has not identified any right that was violated by the alleged unhelpfulness of the City employees. Reply at 2-3. In any event, the City asserts, any claim Plaintiff might have had based on interference with his right to lodge a citizen's complaint is moot because the allegations make clear that Plaintiff was ultimately successful in filing his claim. *Id.* at 3 (citing *Hernandez v. City of Napa,* 781 F.Supp.2d 975, 1003 (N.D. Cal. 2011)).

### III. ANALYSIS

#### A. Legal Standards Under Rule 12(b)(6)

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim on which relief can be granted. "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a plaintiff's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court analyzes the complaint and

takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in original). Rather, the claim must be "'plausible on its face,'" meaning that the plaintiff must plead sufficient factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

### B. Discussion

Under *Monell*, a municipality cannot be held liable for constitutional injuries inflicted by its employees on a theory of respondeat superior. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. A plaintiff seeking to establish municipal liability under section 1983 may do so in one of three ways: 1) the plaintiff may demonstrate that a municipal employee committed the alleged constitutional violation "pursuant to a formal governmental policy or longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity;" 2) the plaintiff may demonstrate that the individual who committed the constitutional violation was

5

an official with "final policy-making authority and that the challenged action itself thus constituted an act of official government policy;" or 3) the plaintiff may demonstrate that "an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992).

Here, Plaintiff attempts to state a claim based on a longstanding policy or practice of making it difficult to hold police accountable for use of excessive force against citizens. The Supreme Court has recognized that a municipality may be held liable on the basis of an unconstitutional policy if the plaintiff can "prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a "custom or usage" with the force of law.' " *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-168 (1970)). Plaintiff's allegations, however, relate only to his own experience of being subjected to rude behavior when he tried to make a citizen's complaint before being referred to the correct department by an African-American employee who spoke "quietly." These allegations are not sufficient to raise a plausible inference of a longstanding policy or practice under *Monell*. *See Lozano v. Cty. of Santa Clara*, No. 19-CV-02634-EMC, 2019 WL 6841215, at *18 (N.D. Cal. Dec. 16, 2019) (dismissing *Monell* claim based on custom and practice on the pleadings because the plaintiff had not alleged that any other person was subjected to similar treatment). Similarly, an isolated comment by an officer who arrived on the scene after the alleged use of force by Officer Hernandez about the force the other officer would have used on Plaintiff, while troubling if true, is not sufficient to establish a policy or custom under *Monell*.

Nor has Plaintiff alleged facts showing that the alleged comment and rude conduct was a reflection of a custom or policy that caused the use of excessive force by Officer Hernandez. *See McDade v. West*, 223 F.3d 1135, 1141 (9th Cir. 2000) (no *Monell* liability where the plaintiff "failed to demonstrate a 'direct causal link' to any municipal policy or custom") (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). Moreover, any possible inference that such a custom prevents citizens from filing complaints with the Department of Accountability and thereby emboldens officers to use excessive force is contradicted by the fact that Plaintiff (whose

experience is the only specific example of the alleged custom or policy) successfully filed such a complaint.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS the Motion and dismisses the *Monell* claim asserted against the City for failure to state a claim under Rule 12(b)(6). Plaintiff may file an amended complaint to address the deficiencies identified herein, namely, that he has named the wrong officer defendant and has not adequately alleged his *Monell* claim. Plaintiff's amended complaint shall be filed no later than **December 10, 2021.** Plaintiff, who is not represented by counsel, is encouraged to contact the Federal Pro Bono Project's Pro Se Help Desk for assistance as he continues to pursue this case. Lawyers at the Help Desk can provide basic assistance to parties representing themselves but cannot provide legal representation. Although in-person appointments are not currently available due to the COVID-19 public health emergency, Plaintiff may contact the Help Desk at (415) 782-8982 or FedPro@sfbar.org to schedule a telephonic appointment.

**IT IS SO ORDERED.**

Dated: November 5, 2021

JOSEPH C. SPERO
Chief Magistrate Judge

7