UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IBRAHIM NIMER SHIHEIBER,<br><br>Plaintiff,<br><br>v.<br><br>OFFICER BRETT HERNANDEZ (BADGE #307), CITY OF SAN FRANCISCO,<br><br>Defendants. | Case No. 21-cv-00609-JCS<br><br>**ORDER GRANTING MOTION TO DISMISS *MONELL* CLAIM AGAINST DEFENDANT CITY OF SAN FRANCISCO**<br><br>Re: Dkt. No. 35 |

## I.   INTRODUCTION

Plaintiff Ibrahim Shiheiber, proceeding pro se, brings this civil rights action based on an encounter with officers of the San Francisco Police Department that occurred on January 24, 2019. He names Officer Brett Hernandez and the City of San Francisco ("City") as defendants. Plaintiff alleges that Officer Hernandez subjected him to an unlawful detention and search and used excessive force on him, in violation of his Fourth Amendment rights. He further alleges that when he later attempted to file a citizen's complaint against the officer, he was sent on a "wild goose chase," suggesting a custom or practice on the part of the City of discouraging citizens from filing complaints against the police, giving rise to liability on the part of the City under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–92 (1978) as to the excessive force claim. The City brought a motion to dismiss seeking dismissal of the *Monell* claim, which the Court granted with leave to amend. *See* dkt. no. 29 ("November 5, 2021 Order"). Plaintiff amended his complaint and the City now brings a renewed motion to dismiss ("Motion"), asking the Court to dismiss Plaintiff's *Monell* claim with prejudice on the basis that he has not cured the deficiencies identified by the Court in its previous order. The Court finds that the Motion is suitable for determination without a hearing and therefore vacates the motion hearing set for March 11, 2022 at 2:00 p.m. pursuant to

Civ. L.R. 7-1(b). The Case Management Conference set for the same time shall remain on calendar.[1] For the reasons set forth below, the Motion is GRANTED.

## II.  BACKGROUND

The factual allegations in the Second Amended Complaint with respect to the underlying events that gave rise to this case – both Plaintiff's encounter with Officer Hernandez and the difficulties he encountered when he attempted to file a complaint with the Office of Accountability – are unchanged from the First Amended Complaint.[2] As the Court summarized those allegations in its previous order, it does not repeat them here.

In the First Amended Complaint, Plaintiff included three allegations in support of this claim. First, he alleged that "the remarks made by the arriving officers [at the scene of the incident] suggests a custom or practice by the City of San Francisco and it officers to use excessive force against citizens." FAC ¶ 28. Second, he alleged that "[a]ctions by the City of San Francisco officials by sending [him] on a wild goose chase from station to station and denying [him] information suggests a custom or practice to deter and discourage citizens from filing complaints against police." *Id.* ¶ 29. Third, he alleged that "[t]he whispering of information by the African American officer/clerk suggests she was going against custom or practice by providing me information about the Department of Accountability." *Id.* ¶ 30.

In its November 5, 2021 Order, the Court found that Plaintiff's allegations did not raise a plausible inference of a longstanding policy or practice of using excessive force because they were limited to Plaintiff's own personal experience and involved only isolated comments. The Court further found that his allegations relating to the difficulties he encountered when he sought to lodge a citizen's complaint did not raise a plausible inference of causation as to the alleged use of excessive force as he was ultimately successful in lodging the complaint. Therefore, the Court granted the City's motion to dismiss the *Monell* claim and gave Plaintiff leave to amend his

---

[1] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).
[2] The Second Amended Complaint does, however, correct the error in Plaintiff's previous complaint as to the identity of the officer he alleges subjected him to excessive force and unlawfully detained him. The confusion arose from the fact that there were two officers at the scene with the surname Hernandez.

complaint to address the deficiencies identified by the Court.

In his Second Amended Complaint, Plaintiff has expanded the allegations in his complaint supporting his *Monell* claim, alleging as follows:

26. When Defendant Officer Brett Hernandez #307 violated my rights, Defendant was acting pursuant to a longstanding, widespread, well-settled practice or custom that constitutes a standard operating procedure of defendant City of San Francisco.

27. The City of San Francisco approves and pays out settlements for Police Officer misconduct continuously with little or no consequence to the officers that committed the injustice.

28. A plaintiff may prove the existence of a custom or informal policy with evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded.

29. i.e., Officer Joshua Cabillo shot a fleeing main in the back. City of San Francisco paid approximately $180,000 for Case No. CGC-19-575896, Oliver Barcenas, et. al v. City and County of San Francisco, et. al for civil rights violations. No charges were filed. Prior to the shooting of Barcenas, a settlement was authorized for another lawsuit Case No. 15-cv-4092; entitled Travis Ian Hall v. City and County of San Francisco, et al; who was beat and falsely arrested by the same officer. No charges were filed.

30. Excessive force is wide-spread and an acceptable practice by SFPD. It is systemic and clearly established from the vetting process while hiring, the payout to cover up police brutality, lack of consequences to officers and no transparency to the public when it comes to a police officer's record of conduct.

31. i.e., SFPD hired officer Cabillo despite a disturbing background consisting of a previous high-profile incident, the shooting and killing of a teenager at his prior post, for which that county also paid a settlement. This demonstrates a direct causal link to an unwritten acceptance of the use of excessive force. In 2020 Cabillo was a rep for the San Francisco Police Officers Association that engages in political advocacy around "law and order," crime legislation and legal protections for individual officers. This position further helps to blanket police officers from receiving consequences of their actions.

32. Post-event evidence is highly probative and may be used to prove the existence of a municipal policy. (municipality's failure to correct blatantly unconstitutional course of treatment even after being sued is persuasive evidence of a policy encouraging such official misconduct).

33. i.e., City and County of San Francisco settled the lawsuit, which was filed on May 2, 2019, in San Francisco Superior Court, Case No. CGC-19-575669; entitled Anthony Economus v. Flint Paul for $275,000. The lawsuit involves civil rights violation and injuries inflicted by a SFPD Sargent that effectively close lined Economus while skateboarding down a hill. No charges were brought against the Sargent.

34. i.e., City and County of San Francisco settled a lawsuit filed on February 28, 2020, in United States District Court, Case No. 20-cv-01486 JSW; entitled Daniel Alvarenga v. City and County of San Francisco, et al. for $60,000 that involved constitutional violation for use of excessive force, officer broke plaintiffs' arm, while making an arrest. No record that the officer received any reprimand.

35. With the exception of one notable case over the last five years, where the City of San Francisco reached a Settlement of Lawsuit - Sean Wendell Moore - $3,250,000, over the 2017 police shooting of an unarmed Black man, Sean Moore, who cursed at officers on his front porch and who was bipolar. An autopsy found his death in 2020 partly resulted from a gunshot wound to his abdomen by police in 2017, who were not lawfully performing their duties when they attacked Moore on his front porch. The District Attorney in this case did file manslaughter charges.

36. Use of excessive force seems an accepted and protected practice with no public access to police officer's conduct records. City of San Francisco has a history of looking the other way as demonstrated in each settlement where an officer remained in uniform.

37. In a COLLABORATIVE REFORM INITIATIVE An Assessment of the San Francisco Police Department in OCTOBER 2016 found• The SFPD does not adequately investigate officer use of force (finding 18). • The SFPD does not maintain complete and consistent officer-involved shooting files (finding 19). • The SFPD has not developed comprehensive formal training specifically related to use of force practices ( finding 6). • The SFPD does not capture sufficient data on arrest and use of force incidents to support strong scientific analysis (finding 20) 38. The fact the public, is only allowed to file a "complaint" against an officer is further protection of their misconduct. I was denied the ability to file assault charges against officer Brett Hernandez #307. I was told I could not do that and deterred three separate times by City of San Francisco personnel. I, however, was persistent, where others are not and easily dissuaded, give up and never successfully file "complaints".
38. The fact that the complainant/victim is not advised of the outcome of the Accountability Department's hearing is indicative of the protection and acceptance of their widespread practice of police brutality and minimal if any consequences for their actions.

40. Defendant, City of San Francisco's official policy or longstanding practice or custom caused the deprivation and violation of my rights by Defendant, Officer Brett Hernandez #307.

41. In the numerous Monell claims against the SFPD/City of San Francisco, where citizens legitimately feel wronged by the police, it is evident that San Francisco Police officers are trained to use whatever level of force they subjectively believe is necessary and to subsequently articulate a legal justification. Where is the check and balance - How many claims of the same nature need to be filed to institute effect on the municipality in question; City of San Francisco.

SAC ¶¶ 26-41.

In the instant Motion, the City contends Plaintiff's allegations are insufficient, as a matter

4

of law, to establish a custom or practice for the purposes of *Monell* because Plaintiff's allegations remain conclusory and the small number of lawsuits that Plaintiff cites, where claims of excessive force by SFPD officers were settled and no criminal charges were brought against the officers, at best establish random acts or isolated incidents of the unconstitutional use of force by non-policy making individuals. The City also points out that the officer in *Moore* faced criminal charges, as is expressly alleged in the complaint, and thus, that example does not support Plaintiff's *Monell* claim. Finally, it contends the allegations based on the 2016 Department of Justice study are insufficient to show a widespread practice of excessive force at the time of the relevant events, in 2019, as Plaintiff "cherry-picked" from the report.

In his opposition, Plaintiff asserts that each of the settlements paid in the excessive force cases described in the Second Amended Complaint reflects "the City of San Francisco's acceptance to continue to pay out for these actions, then allowing the same officers back onto the streets, even after numerous complaints and or settlements such as Cabillo." Opposition at 3. He notes that "[t]he Moore case was not included to support the *Monell* claim rather as an example of the only case found where criminal charges were actually filed, and those charges were likely derivative of the settlement amount." *Id.*

### III.   ANALYSIS

#### A.   Legal Standards Under Rule 12(b)(6)

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim on which relief can be granted. "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a plaintiff's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court analyzes the complaint and takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

5

Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in original). Rather, the claim must be "'plausible on its face,'" meaning that the plaintiff must plead sufficient factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

**B.  Discussion**

As discussed in the Court's previous order, a plaintiff seeking to establish municipal liability under section 28 U.S.C. § 1983 may do so in one of three ways: 1) the plaintiff may demonstrate that a municipal employee committed the alleged constitutional violation "pursuant to a formal governmental policy or longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity;" 2) the plaintiff may demonstrate that the individual who committed the constitutional violation was an official with "final policy-making authority and that the challenged action itself thus constituted an act of official government policy;" or 3) the plaintiff may demonstrate that "an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992).

Here, Plaintiff seeks to hold the City of San Francisco liable for the alleged constitutional violations of Officer Hernandez under the first theory, that is, on the basis of a longstanding

6

practice or custom. To establish *Monell* liability under this theory, the custom must be so "persistent and widespread" that it constitutes a "permanent and well settled city policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996), holding modified on other grounds by *Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) (quoting *Monell*, 436 U.S. at 691). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Id*. (citations omitted).

"The line between 'isolated or sporadic incidents' and 'persistent and widespread conduct' is not clearly delineated, although where more than a few incidents are alleged, the determination appears to require a fully-developed factual record." *Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1096 (E.D. Cal. 2012) (citing cases). The Court finds that the handful of cases cited by Plaintiff are not sufficient to give rise to a plausible inference that there is a permanent and well settled city policy of using excessive force, especially as almost no specific facts are alleged as to the other incidents that allow the Court to conclude that the underlying events in those cases were similar to the events alleged in this case. *See AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012)(holding that "bare allegation that government officials' conduct conformed to some unidentified government policy or custom" failed to plausibly allege *Monell* liability under standards of *Iqbal* and *Twombley*). Further, Plaintiff has not plausibly alleged that the practice of settling lawsuits involving alleged use of excessive force was a "moving force" that caused Officer Hernandez to use excessive force against Plaintiff. *See Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) ("A government entity may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights.") (citing *Monell*, 436 U.S. at 694).

Therefore, the Court concludes Plaintiff's *Monell* claim against the City fails as a matter of law. Because Plaintiff has been given leave to amend and has been unable to cure this defect, the Court concludes that amendment is futile and dismisses the *Monell* claim with prejudice.

**IV.   CONCLUSION**

For the reasons stated above, the Motion is GRANTED. The *Monell* claim against the

7

City, which is the only claim against that defendant, is dismissed with prejudice. The Clerk is instructed to terminate the City of San Francisco as a defendant in this case.

**IT IS SO ORDERED.**

Dated: March 8, 2022

_____
JOSEPH C. SPERO
Chief Magistrate Judge