UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IBRAHIM NIMER SHIHEIBER,<br><br>          Plaintiff,<br><br>     v.<br><br>BRETT HERNANDEZ,<br><br>          Defendant. | Case No. 21-cv-00609-JCS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 49 |

## I.     INTRODUCTION

Plaintiff Ibrahim Shiheiber asserts civil rights claims under 42 U.S.C. § 1983 against San Francisco Police Department ("SFPD") Officer Brett Hernandez (badge #307) based on alleged violations of Shiheiber's Fourth Amendment rights during an encounter that occurred on January 24, 2019.[1] Shiheiber alleges the following three violations of his Fourth Amendment rights: 1) unlawful detention; 2) excessive force; and 3) unlawful search. Presently before the Court is Officer Hernandez's Motion for Summary Judgment ("Motion"), in which he asks the Court to dismiss all of Shiheiber's claims against him. In particular, Officer Hernandez contends he is entitled to summary judgment on Shiheiber's claims because: 1) Officer Hernandez had reasonable suspicion to detain Shiheiber for violation of the vehicle code, and subsequently had probable cause to detain him for violation of Cal. Penal Code § 148; 2) Officer Hernandez was justified in performing a pat search of Shiheiber for weapons and used reasonable force to overcome Plaintiff's resistance; and 3) Officer Hernandez is entitled to qualified immunity from

---

[1] Another officer involved in the encounter, Officer Jacqueline Hernandez (badge #4039), is not a defendant in this case. In this Order, references to "Officer Hernandez" are to Officer Brett Hernandez. The Court refers to Officer Jacqueline Hernandez as "Officer J. Hernandez."

1  liability. The Court finds that the Motion is suitable for determination without a hearing and

2  therefore vacates the motion hearing set for October 21, 2022 pursuant to Civil Local Rule 7-1(b).

3  **The Case Management Conference set for the same date will remain on calendar and will be**

4  **conducted at 9:30 a.m.**   For the reasons stated below, the Motion is GRANTED IN PART AND

5  DENIED IN PART.[2]

6  **II.   BACKGROUND**

7  Most of the encounter between Shiheiber and Officers Hernandez and J. Hernandez was

8  captured on the body camera footage of the two officers and therefore the basic facts are largely

9  undisputed.  *See* Hannawalt Decl., Exs. C-E.  The parties' interpretations of the events, however,

10  vary widely, with each side offering evidence to which the other side objects to bolster his

11  interpretation of the body camera footage.  Shiheiber offers the administrative record related to the

12  complaint he filed with the Department of Police Accountability ("DPA") in connection with the

13  incident, including a report describing the results of DPA's investigation and sustaining his

14  complaint; and the decision of an administrative law judge rejecting Officer Hernandez's appeal of

15  the discipline imposed as a result of his conduct.  Shiheiber Decl., Ex. B. Officer Hernandez, in

16  turn, offers a report by a police practices expert, Jeffrey Martin, who analyzed the body camera

17  footage and concluded that Officer Hernandez's conduct did not violate Shiheiber's constitutional

18  rights.  Hannawalt Dec., Ex. C (Martin Report).

19  In addition to the DPA administrative record, Shiheiber offers declarations of friends and

20  family who observed the mental and physical impact of the encounter with Officer Hernandez on

21  Shiheiber.  *See* Dkt. 56 (McKinley Decl.), 57 (Rufael Decl.), 58 (Tassell Decl.), 59 (Randall

22  Decl.).  He also offers as exhibits the CAD printout associated with the encounter and an image of

23  a text message that Shiheiber says was sent by the owner of the Yellow Submarine, the sandwich

24  shop adjacent to the location of the encounter, telling Shiheiber's father that his son had been

25  arrested.  Shiheiber Decl., Exs. C & D.  In addition to the report of the police practices expert,

26  Officer Hernandez has submitted the incident report completed by Officer J. Hernandez and a

27

28  [2] The parties consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

1  copy of the traffic citation that was issued to Shiheiber after he was stopped and detained by
2  Officer Hernandez.  Hannawalt Decl., Exs. F, G.  Officer Hernandez also relies heavily on the
3  video footage taken with his own body camera and that of Officer J. Hernandez during the
4  encounter.  Hannawalt Decl., Exs. C-E.  Both Shiheiber and Officer Hernandez have supplied
5  declarations containing their accounts of the incident. Dkt. 49-9, 55.

**III.   ANALYSIS**

   **A.   Evidentiary Objections**

       **1.   Defendant's Objections**

Officer Hernandez asserts a variety of objections to the following evidence offered by Shiheiber: 1) portions of the DPA record (Shiheiber Decl., Ex. B); 2) the image of the text message purportedly from the Yellow Submarine owner to Shiheiber's father (Shiheiber Decl., Ex. D); and 3) the McKinley, Rufael, Tassell and Randall declarations.  *See* Reply at 3-4.  The Court does not rely on any of this evidence in this Order and therefore declines to rule on these evidentiary objections.

       **2.   Plaintiff's Objections**

Shiheiber objects to the report of the police practices expert, Jeffrey Martin, on the basis that it constitutes improper opinion evidence.  Opposition at 22-23. An expert may not provide "impermissible legal conclusions or make credibility determinations reserved for the trier of fact." *Engman v. City of Ontario*, 2011 WL 2463178 at *8 (C.D. Cal. June 20, 2011). Likewise, an expert may not offer legal conclusions "couched in the guise of 'training[.]'" *Godinez v. Huerta*, No. 16-CV-0236-BAS-NLS, 2018 WL 2018048, at *6 n. 2 (S.D. Cal. May 1, 2018).  As the court in *Godinez* explained, "[s]uch conclusions are generally not helpful to the trier of fact."  *Id.* (citation omitted); *see also Taylor v. Lemus*, No. CV 11-9614 FMO, 2015 WL 12698306, at *6 C.D. Cal. June 17, 2015 (observing that an expert's "opinion as to what 'current law' 'mandates' or whether defendants were 'legally' 'justified' in using the force applied against [the plaintiff] usurps the jury's role") (citing *Sloman v. Tadlock*, 21 F.3d 1462, 1468 (9th Cir. 1994)). Thus, to the extent Mr. Martin offers ultimate conclusions on the legality of Officer Hernandez's conduct, those opinions are inadmissible.

Mr. Martin also offers opinions about the underlying facts in a section of his report entitled "reconstruction," relying not only on his interpretation of the body camera footage but also other evidence, including the DPA interviews that Officer Hernandez argues are inadmissible in his Reply brief. *See* Hannawalt Decl., Ex. C (Martin Report) at 12-16. To the extent these opinions usurp the jury's role as factfinder, they are likely inadmissible. The Court does not decide that question, however, because, as discussed below, the jury could reasonably reach different conclusions based on the body camera footage, *e.g*., that Shiheiber was not being "evasive" or engaging in "escape- or assault-related behaviors." *See id.* at 19. Thus, even assuming Mr. Martin's opinions interpreting the underlying facts are admissible, they do not establish *as a matter of law*, that Officer Hernandez is entitled to summary judgment that he acted lawfully.

### B. Legal Standards Under Rule 56

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to designate "'specific facts showing there is a genuine issue for trial.'" *Id*. (citation omitted); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). "[T]he inquiry involved in a ruling on a motion for summary judgment . . . implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 252 (1986). The non-moving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). Thus, it is not the task of the court to scour the record in search of a genuine issue of triable fact. *Id*.; *see Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); Fed. R. Civ. P. 56(c)(3).

4

1   A party need not present evidence to support or oppose a motion for summary judgment in
2   a *form* that would be admissible at trial, but the *contents* of the parties' evidence must be amenable
3   to presentation in an admissible form.  *See Fraser v. Goodale*, 342 F.3d 1032, 1036–37 (9th Cir.
4   2003).  Neither conclusory, speculative testimony in affidavits nor arguments in moving papers
5   are sufficient to raise genuine issues of fact and defeat summary judgment.  *Thornhill Publ'g Co.,*
6   *Inc. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir. 1979).  On summary judgment, the court draws all
7   reasonable factual inferences in favor of the non-movant, *Scott v. Harris*, 550 U.S. 372, 378
8   (2007), but where a rational trier of fact could not find for the non-moving party based on the
9   record as a whole, there is no "genuine issue for trial" and summary judgment is appropriate.
10  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

### C.   Legal Standards Under 42 U.S.C. § 1983 and the Fourth Amendment

Section 1983 provides "a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (citation omitted). Thus, analysis of a civil rights claim brought under § 1983 begins with the identification of the specific constitutional right allegedly infringed. *Id.* at 394.  The claim is then evaluated under the constitutional standards that apply to that constitutional right. *Id.* (citing *Tennessee v. Garner*, 471 U.S. 1, 7–22 (1985)). All of the claims asserted in this case are based on alleged violations of Shiheiber's Fourth Amendment rights.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV. Searches and seizures "'conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions.'" *Thompson v. Louisiana*, 469 U.S. 17, 19–20 (1984) (per curiam ) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967) (footnotes omitted)).

"One such exception was recognized in *Terry v. Ohio*, 392 U.S. 1, 88 (1968), which held

1   that 'where a police officer observes unusual conduct which leads him reasonably to conclude in
2   light of his experience that criminal activity may be afoot . . . ,' the officer may briefly stop the
3   suspicious person and make 'reasonable inquiries' aimed at confirming or dispelling his
4   suspicions." *Minnesota v. Dickerson*, 508 U.S. 366, 372–73 (1993)  (quoting *Terry*, 392 U.S., at
5   30).  To justify such an intrusion, "the police officer must be able to point to specific and
6   articulable facts which, taken together with rational inferences from those facts, reasonably
7   warrant [the] intrusion." *Terry*, 392 U.S. at 21.  "[A] search which is reasonable at its inception
8   may violate the Fourth Amendment by virtue of its intolerable intensity and scope." *Id.*  at 18.

9   In California, where an individual refuses to cooperate during a lawful investigative
10  detention, this may give officers probable cause to arrest the individual for violating Cal. Pen.
11  Code § 148(a)(1), which prohibits "willfully resist[ing], delay[ing], or obstruct[ing] any public
12  officer [or] peace officer . . . in the discharge or attempt to discharge any duty of his or her office
13  or employment." *Vanegas v. City of Pasadena*, No. 220CV07845SVWAGR, 2021 WL 1917126,
14  at *5 (C.D. Cal. Apr. 13, 2021), aff'd, 46 F.4th 1159 (9th Cir. 2022) (citing *Abdel-Shafy v. City of
15  San Jose*, 2019 WL 570759, at *7 (N.D. Cal. 2019) (refusal to produce identification during valid
16  *Terry* stop constituted probable cause for arrest under Cal. Pen. Code § 148(a)(1)); *Nakamura v.
17  City of Hermosa Beach*, 2009 WL 1445400, at *8-*9 (C.D. Cal. 2009), aff'd, 372 F. App'x 787
18  (9th Cir. 2010) (same)).

19  In addition, "[w]hen an officer is justified in believing that the individual whose suspicious
20  behavior he is investigating at close range is armed and presently dangerous to the officer or to
21  others, it would appear to be clearly unreasonable to deny the officer the power to take necessary
22  measures to determine whether the person is in fact carrying a weapon and to neutralize the threat
23  of physical harm." *Terry*, 392 U.S. at 24.  "A search for weapons in the absence of probable cause
24  to arrest, however, must, like any other search, be strictly circumscribed by the exigencies which
25  justify its initiation."  *Id.* (citing *Warden v. Hayden*, 387 U.S. 294, 310 (1967) (Mr. Justice Fortas,
26  concurring)). "Thus it must be limited to that which is necessary for the discovery of weapons
27  which might be used to harm the officer or others nearby, and may realistically be characterized as
28  something less than a 'full' search, even though it remains a serious intrusion." *Id.*

6

1  "If the protective search goes beyond what is necessary to determine if the suspect is
2  armed, it is no longer valid under *Terry* . . . ." *United States v. Brown*, 996 F.3d 998, 1008 (9th
3  Cir. 2021). For example, an officer who reaches into an individual's pocket without first patting
4  down the individual and detecting a possible weapon in their pocket exceeds the scope of the
5  *Terry* stop. *See United States v. Brown*, 996 F.3d 998, 1009 (9th Cir. 2021) (holding that officer
6  exceeded scope of *Terry* stop when he did not bother to conduct "an initial limited exploration for
7  arms," or any other less intrusive examination, but instead proceeded immediately to search the
8  detainee's pocket"); *Minnesota v. Dickerson*, 508 U.S. 366, 377 (1993) (holding that police officer
9  "overstepped the bounds of the 'strictly circumscribed' search for weapons allowed under *Terry*"
10  when he continued to explore the individual's pocket after having concluded that it contained no
11  weapon because he felt a small, hard object he thought was contraband – a purpose that was
12  unrelated to "[t]he sole justification of the search [under *Terry*: ] . . . the protection of the police
13  officer and others nearby.") (quoting *Terry*, 392 U.S. at 29).

14  A claim of excessive force in the context of an arrest or investigatory stop implicates the
15  Fourth Amendment right to be free from "unreasonable seizures." *Graham v. Connor*, 490 U.S.
16  386, 394 (1989); *see also Cnty. of Los Angeles, Calif. v. Mendez*, 137 S. Ct. 1539, 1547 (2017)
17  ("An excessive force claim is a claim that a law enforcement officer carried out an unreasonable
18  seizure through a use of force that was not justified under the relevant circumstances."). To
19  determine whether the use of force is objectively reasonable, courts consider: (1) "the severity of
20  the intrusion on the individual's Fourth Amendment rights by evaluating 'the type and amount of
21  force inflicted,'" (2) "the government's interest in the use of force," and (3) the "balance the
22  gravity of the intrusion on the individual" and "the government's need for that intrusion." *Glenn v.*
23  *Washington Cty.*, 673 F.3d 864, 871 (9th Cir. 2011) (citations omitted).

24  The reasonableness of the use of force is evaluated under an "objective" inquiry that pays
25  "careful attention to the facts and circumstances of each particular case." *Graham*, 490 U.S. at
26  396. The "'reasonableness' of a particular use of force must be judged from the perspective of a
27  reasonable officer on the scene," without regard for the officer's subjective intent or motivation
28  and without "the 20/20 vision of hindsight." *Id*. Thus, excessive force claims "are evaluated for

objective reasonableness based upon the information the officers had when the conduct occurred." *Mendez*, 137 S. Ct. at 1546–47 (citation omitted). "That inquiry is dispositive: When an officer carries out a seizure that is reasonable, taking into account all relevant circumstances, there is no valid excessive force claim." *Id*. at 1547.

"Force is excessive when it is greater than reasonable under the circumstances," *Santos v. Gates*, 287 F.3d 846, 854 (9th Cir. 2002), and "the reasonableness of force used is ordinarily a question of fact for the jury." *Liston v. Cty. of Riverside*, 120 F.3d 965, 976 n.10 (9th Cir. 1997). "Because [the excessive force] inquiry is inherently fact specific, the determination whether the force used to effect an arrest was reasonable under the Fourth Amendment should only be taken from the jury in rare cases." *Green v. City & Cty. of San Francisco*, 751 F.3d 1039, 1049 (9th Cir. 2014) (internal quotation marks and citation omitted); see also *Chew v. Gates*, 27 F.3d 1432, 1443 (9th Cir. 1994) ("[W]hether a particular use of force was reasonable is rarely determinable as a matter of law."). Nevertheless, defendant officers "can still win on summary judgment if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances." *Liston*, 120 F.3d at 976 n.10 (citation omitted).

### D. Whether Officer Hernandez is Entitled to Summary Judgment on Mr. Hernandez's Fourth Amendment Claims

#### 1. Unlawful Detention Claim

Officer Hernandez argues that his initial detention of Shiheiber was justified because Shiheiber committed a traffic offense in Officer Hernandez's presence, and that because Shiheiber subsequently delayed and obstructed Officer Hernandez's performance of his duties, his continued detention of Shiheiber was lawful based on Shiheiber's violation of Cal. Penal Code § 148. Motion at 3.  The Court concludes that while the undisputed facts establish that the initial *Terry* stop was lawful, there are disputed material facts as to whether Shiheiber violated Cal. Penal Code § 148.  Consequently, there are material disputes of fact as to whether the length and scope of the detention violated the Fourth Amendment.

The facts are disputed as to whether Officer Hernandez actually witnessed Shiheiber

1  pulling up in front of the fire hydrant. Officer Hernandez states in his declaration that he saw
2  Shiheiber turn right onto 6th Avenue and park in a red zone next to a fire hydrant. Hernandez
3  Decl. ¶ 2. Shiheiber states that while the squad car had been following him on 7th Avenue and
4  then Irving Street, it was delayed as it approached 6th Avenue due to an illegally parked car and
5  was no longer directly behind him when he turned onto 6th Avenue. Shiheiber Decl. ¶ 3.
6  Shiheiber argues in his Opposition that based on his location at the beginning of the body camera
7  footage (already outside of the parked car) it is clear that Officer Hernandez couldn't have actually
8  witnessed him parking in front of the fire hydrant because of the delay Officer Hernandez
9  experienced on 6th Avenue. Opposition at 8. Shiheiber does not, however, dispute, that when
10 Officer Hernandez pulled up behind him his car was parked next to a fire hydrant, in a red zone,
11 and that Shiheiber was walking away from it. Nor does he dispute that parking his car in this
12 manner was a violation of Cal. Veh. Code section 22541.[3] These undisputed facts are sufficient to
13 justify Officer Hernandez's initial detention of Shiheiber even if he did not witness Shiheiber
14 pulling up next to the fire hydrant. *See In re H.M.*, 167 Cal. App. 4th 136, 142 (2008) (holding
15 that a *Terry* stop is justified if it is based on at least reasonable suspicion that the individual has
16 violated the Vehicle Code or some other law). Thus, Officer Hernandez is entitled to summary
17 judgment that the initial detention was lawful.
18     On the other hand, the question of whether the *scope* of the detention was lawful cannot be
19 decided on summary judgment because there are material disputes of fact on that question.
20 Officer Hernandez justifies the length of the detention, as well as the search and use of force

---

[3] Section 22541 provides:

No person shall stop, park, or leave standing any vehicle within 15 feet of a fire hydrant except as follows:

   (a) If the vehicle is attended by a licensed driver who is seated in the front seat and who can immediately move such vehicle in case of necessity.
   (b) If the local authority adopts an ordinance or resolution reducing that distance. If the distance is less than 10 feet total length when measured along the curb or edge of the street, the distance shall be indicated by signs or markings.
   (c) If the vehicle is owned or operated by a fire department and is clearly marked as a fire department vehicle.

Cal. Veh. Code § 22541.

1  (discussed below) on the basis that Shiheiber obstructed and delayed the performance of his
2  duties.  Among other things, Officer Hernandez states that Shiheiber initially failed to obey the
3  officers' commands to stop, repeatedly walked away from the officers and failed to obey
4  commands, and was "unusually argumentative and evasive."  Hernandez Decl. ¶¶ 3-5.  A jury
5  viewing the body camera footage, however, could reasonably reach different conclusions about
6  Shiheiber's conduct.  For example, when Officer Hernandez initially stated "come here" and
7  Shiheiber responded, "no thank you," a jury could reasonably concluded that Shiheiber did not
8  understand he was being detained; the video also appears to show that when Officer Hernandez
9  explicitly told Shiheiber he was being detained, Shiheiber immediately stopped.  Likewise, a jury
10 could conclude that Shiheiber was attempting to comply when he turned to walk towards his car,
11 saying "okay, I'm going to move my car" just after Officer Hernandez stated, "you're parked in
12 the red, blocking the fire hydrant" and Officer J. Hernandez said, "you're parked right now."  In
13 general, a jury might reasonably find based on the body camera footage, that while Shiheiber
14 argued with the officers about whether he was parked illegally and repeatedly told them that they
15 did not have the right to touch him, he was not attempting to flee and was not physically
16 aggressive or threatening.  Therefore, the Court finds that there are material disputes of fact that
17 preclude summary judgment on Shiheiber's unlawful detention claim, other than with respect to
18 the initial stop of Shiheiber by Officer Hernandez.

### 2. Unlawful Search Claim

20 As discussed above, a "pat and frisk" is permissible during a *Terry* stop where the officer
21 reasonably believes the individual is armed and therefore presents a danger to the officers.  Officer
22 Hernandez relies on Shiheiber's "overall demeanor," his attempts to walk back to his car, and his
23 baggy clothes, to justify his pat search, asserting that these factors led him to believe that
24 Shiheiber was armed and dangerous.  Hernandez Decl. ¶ 6.  Yet, as discussed above, a jury could
25 reasonably reach different conclusions about Shiheiber's conduct based on the body camera
26 footage.  Further, baggy clothing by itself is not a sufficient basis for conducting a pat-down
27 search.  *See People v. Collier*, 166 Cal. App. 4th 1374, 1377 n. 1 (2008) (holding that police do
28 not have "carte blanche to pat down anyone wearing baggy clothing" but that "the wearing of

10

baggy clothing, coupled with other suspicious circumstances . . . furnishes the requisite facts to support a pat-down for weapons"). Similarly, "[a] refusal to consent to a search cannot itself form the basis for reasonable suspicion" to conduct a search." *In re H.H.*, 174 Cal. App. 4th 653, 658 (2009). As the *H.H.* court observed, if a refusal to consent to a search were considered as a basis for reasonable suspicion, "nothing would be left of Fourth Amendment protections. A motorist who consented to a search could be searched; and a motorist who refused consent could be searched, as well." *Id.* (citations omitted).

Drawing all reasonable inferences in Shiheiber's favor, there are material disputes of fact that preclude summary judgment on his unlawful search claim.

### 3. Excessive Force Claim

As discussed above, whether an Officer's use of force was reasonable is rarely appropriate for summary judgment and that is the case here.

The accounts offered by Shiheiber and Officer Hernandez vary significantly with respect to whether Shiheiber "posed an immediate threat to [the] officer[s] or public safety[,]" which is considered one of the most important factors in determining whether a particular use of force was reasonable. *See Young v. County of Los Angeles*, 655 F.3d 1156, 1163 (9th Cir. 2011). Shiheiber says Officer Hernandez initially reached out and pushed him to reprimand him for questioning the officers as to whether he was parked illegally. Shiheiber Decl. ¶ 5. Officer Hernandez states that when he placed his hand on Shiheiber's chest it was to prevent him from going back to his car. Hernadez Decl. ¶ 4. Shiheiber states that when the officers took him to the ground he was "maintaining [his] manners[,]" was not being aggressive or yelling, and posed no threat, with his glasses and phone in his hands; yet Officer Hernandez "grabbed [his] right arm, twisted [his] wrist, yanked [his] arm behind [his] back and tripped [him] to the ground" even as Shiheiber repeatedly told the officers they were hurting him, asked them to stop and let him get off the ground, and promised he would put his hands behind his back. Shiheiber Decl. ¶ 6. Officer Hernandez says that he tried to "grab" Shiheiber to restrain him because Shiheiber was walking towards the street and that when he did so Shiheiber "fell backwards onto the ground." Hernandez Decl. ¶ 7. According to Officer Hernandez, when Shiheiber "actively resist[ed]," Officer

11

1   Hernandez used only the force necessary to overcome Shiheiber's resistance, namely, use of
2   Officer Hernandez's body weight, control holds, and manipulation of Shiheiber's arms to get him
3   into handcuffs. *Id.*
4       The body camera footage does not conclusively establish that Officer Hernandez's version
5   of what occurred is accurate. Rather, a jury might or might not conclude that Shiheiber was
6   actively resisting Officer Hernandez's attempts to place him in handcuffs, depending not only on
7   their interpretation of the body camera footage but also on how credible they find Officer
8   Hernandez and Shiheiber's testimony and other evidence such as the Incident Report completed
9   by Officer J. Hernandez. Moreover, to the extent that a jury could reasonably conclude that
10  Shiheiber was not actively resisting arrest, the only governmental interest in the use of force
11  would be based on the traffic violation he committed when he parked next to a fire hydrant in a
12  red zone, but such a misdemeanor offense, without more, "does not give rise to a governmental
13  interest in the use of significant force." *Young v. Cnty. of Los Angeles*, 655 F.3d 1156, 1165 (9th
14  Cir. 2011). Therefore, summary judgment on this claim is not appropriate.

### E.  Whether Officer Hernandez is Entitled to Qualified Immunity

The doctrine of qualified immunity protects government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The salient question is whether the state of the law at the time of an incident provided fair warning to the defendants that their alleged conduct was unconstitutional." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (cleaned up). The qualified immunity inquiry does not alter the general rule on summary judgment that factual disputes and reasonable inferences must be resolved in favor of the non-moving party. *See id*. at 657–60. Thus, "courts must take care not to define a case's 'context' in a manner that imports genuinely disputed factual propositions." *Id.* at 657. Drawing all reasonable inferences in favor of Shiheiber, the Court finds that a jury could reasonably conclude that Officer Hernandez exceeded the scope of the initial *Terry* stop because he did not have probable cause to arrest him for delaying or obstructing performance of his duties, that he did not have a reasonable suspicion that Shiheiber

was armed and presently dangerous and therefore was not justified in conducting a pat-and-frisk, and that he did not have a reasonable basis to use significant force against Shiheiber considering the threat he posed (or did not pose) to the officers and the public and the severity of the crime at issue. All of these violations involve clearly established rights under the Fourth Amendment of which a reasonable officer would have been aware. Therefore, Officer Hernandez is not entitled to summary judgment on the question of qualified immunity in this case.

## IV. CONCLUSION

For the reasons stated above, the Motion is GRANTED IN PART AND DENIED IN PART. Having denied Defendant's motion for summary judgment, the Court intends to appoint counsel to represent Shiheiber for the remainder of the case, including for trial, so long as he qualifies for such an appointment under General Order 25. Shiheiber is therefore instructed to contact the Legal Help Center by calling (415) 782-8982 or emailing fedpro@sfbar.org to arrange an appointment. The Legal Help Center will assess Shiheiber, pursuant to General Order 25, to determine whether he is eligible for appointment of pro bono counsel to represent him.

**IT IS SO ORDERED.**

Dated: October 18, 2022

_____
JOSEPH C. SPERO
Chief Magistrate Judge